Nannie B. JASPER, Executrix of the Estate of Starlin Jasper, Appellant,

v.

Helen CARTER, Appellee.

No. 81–540.

District of Columbia Court of Appeals.

Submitted June 17, 1982.

Decided Sept. 14, 1982.

Douglas J. Rykhus, Washington, D. C., was on the brief for appellant.

Reginald L. Holt, Washington, D. C., was on the brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant, executrix of the estate of decedent Starlin Jasper, appeals from a judgment which awarded $5,105 to appellee based on the decedent's failure to satisfy child support obligations over the period 1958–1975. We hold that the trial court properly allowed appellee to recover arrearages in these payments which had accrued during the child's minority. However, because the trial court allowed appellee to recover payments which, because of the passage of time, might have been without effect as enforceable money judgments, we vacate the judgment and remand this case for recalculation of the amount to which appellee is entitled.

## I.

A 1958 decree of the trial court divorced appellee and the decedent and ordered the decedent to pay appellee ten dollars per week for the support of their minor child. Over the period 1958–1975, when the child reached majority, the decedent substantially failed to meet the child support obligation imposed by this order.[1] Appellee filed two motions to enforce the child support order in 1960 but took no further action to assert her rights until after the death of her former husband in 1978. Thereafter in 1980, she filed a claim against his estate seeking recovery of arrearages in the court-ordered support payments.

At trial and in her motion to reconsider, appellant argued that the defense of laches barred this claim based on appellee's failure to assert her rights until 1980. The trial court denied this defense on the ground that the evidence did not establish that the decedent had relied detrimentally on appellee's delay in enforcing her claims. The court also ruled that the decedent's estate could not raise this equitable defense because the decedent lacked "clean hands," having acknowledged his child support obligation by compliance with the court order on numerous occasions, some as late as 1972. The court then computed the total amount of support payments due under the order, subtracted the amount actually paid by decedent, and entered judgment for appellee for the balance.

## II.

In *Kephart v. Kephart,* 89 U.S.App.D.C. 373, 380–81, 193 F.2d 677, 684 (1951) (en banc), *cert. denied,* 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952), the United States Court of Appeals held that a trial court

cannot modify or remit installments of alimony after they have become due by the terms of the original judgment which ordered their payment. When a decree awards alimony payable in future installments, the right to each installment becomes absolute and vested when it becomes due, provided no modification of the decree had been made prior to its maturity. Each installment which matures under a decree which has not been modified becomes a judgment debt similar to any other judgment for money. The original decree is final in character with respect to each matured installment and so cannot be challenged [on appeal] and should not be challenged elsewhere. Execution may issue upon it.

This court further clarified the law with respect to enforcement and collection of

---

1. The court determined that, of $8,800 payable under this order, appellant paid only $3,695.

past due court-ordered alimony and child support payments in *Lomax v. Spriggs,* D.C. App., 404 A.2d 943 (1979). Therein we held, pursuant to *Kephart, supra,* that

> each support payment [becomes] a separate judgment as of the date the payment [falls] due and . . . the life of each judgment is the twelve-year period specified in D.C.Code 1973, § 15–101, irrespective of whether the judgments are or are not recorded. As to the life of [each] judgment, § 15–101 specifies that a judgment is in force for twelve years from when "execution might first be issued thereon." [*Lomax, supra* at 945.]

Corollary to this holding is the conclusion that, unless an order reviving such a judgment is issued within twelve years of the date on which the court-ordered support payment matures, the judgment "cease[s] to have any operation or effect." D.C.Code 1973, §§ 15–101(b), –103.

▮▮▮ It is true that the defense of laches may partially or wholly bar an action to collect past due support payments. *Brandt v. Brandt,* 107 U.S.App.D.C. 242, 276 F.2d 488 (1960).[2] When this equitable defense is raised in an action to collect past due support payments the trial court must therefore determine whether the elements of laches are present, *viz.,* undue delay, unexplained delay, and injustice to the party asserting the defense. *See Schmittinger v. Schmittinger,* D.C.App., 404 A.2d 967, 970 (1979).

### III.

▮▮▮ Turning now to consider the instant case, we hold that the trial court correctly

---

**2.** We question whether laches should be available as a defense in an action which seeks to collect mature court-ordered support payments. While *Lomax* expressed no opinion concerning the availability of this defense, laches appears incompatible with the view that court-ordered support payments become enforceable money judgments upon maturation. *See* cases collected in Annot., 5 A.L.R. 4th 1015, §§ 4, 5 (1981); *compare Schmittinger v. Schmittinger,* D.C.App., 404 A.2d 967 (1979) (laches available as a defense to an action seeking to collect past due child support payments provided for in *separation agreement* which was *not* merged in divorce decree); *Amidon v.*

applied the law of this jurisdiction in allowing appellee to recover past due child support payments and denying appellant the equitable defense of laches. As the child support payments came due over the period 1958–1975 they matured into money judgments valid for the period of time that this court has held that they may be enforced. *See Lomax, supra* at 951; *Kephart, supra;* D.C.Code 1973, § 15–101(b). In evaluating the trial court's ruling that laches did not bar enforcement of these judgments, we note that "the determination of whether the defense of laches is available is appropriately made by the trial court." *Schmittinger, supra* at 970 (citing *King v. Kitchen Magic, Inc.,* D.C.App., 391 A.2d 1184 (1978)). We need not consider whether appellee's delay in enforcing her claims was undue and unexplained nor whether the decedent lacked "clean hands" since we conclude that the trial court correctly ruled that appellant failed to establish that injustice would result from enforcement of the decedent's support obligations. *See generally* Annot., 15 A.L.R. 4th 1015, § 6 (1981).

▮▮▮ Injustice normally results where the defendant has been prejudiced by the plaintiff's delay.

> [T]here are two kinds of prejudice which would support a defense of laches: where the plaintiff's delay has resulted in a loss of evidence or unavailability of witnesses that would support defendant's position; and where the defendant has changed his position in a manner which would not have occurred if the plaintiff had not delayed. [*Concerned About Trident v.*

*Amidon,* D.C.App., 280 A.2d 82 (1971) (same); *and Kephart, supra* at 376, 193 F.2d at 680 (laches available as defense to *contempt* proceeding based on failure to satisfy court-ordered support obligations).

Nevertheless, *Brandt* held that laches is available as a defense to an action for past due and accrued alimony and child support payments while recognizing that the authorities are divided on this question. 107 U.S.App.D.C. at 244 n.2, 276 F.2d at 490 n.2. Because we are bound by this decision, *see M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971), we must consider whether the trial court correctly ruled that appellant failed to establish this defense.

*Schlesinger,* 400 F.Supp. 454, 478 (D.D.C. 1975), *modified,* 180 U.S.App.D.C. 345, 555 F.2d 817 (1977) (citations omitted).] The evidence before the trial court in the instant case revealed that the decedent had failed to satisfy his support obligations to the extent of $5,105 and that, on two occasions during her minority, he gave his daughter cash totalling $110. Appellant thus failed to establish that the decedent changed his position in reliance on appellee's delay in enforcing her claims to such an extent that injustice would result from enforcement at this time. *Compare Amidon v. Amidon,* D.C.App., 280 A.2d 82 (1971) (detrimental reliance was established and operated to bar action by mother to collect past due child support payments where father financed education of child in private institutions and could not have done so had he paid court-ordered child support). Similarly, we find no merit in appellant's argument that the death of Starlin Jasper has resulted in the loss of evidence and a witness who would support her position. Court records before the trial court established the extent of the decedent's compliance with the order, and the testimony of the decedent's daughter concerning the monetary gifts she received from her father during her minority was consistent with appellant's testimony on this subject. Appellant did not contend at trial that court records failed to reflect all of the decedent's child support payments, nor did she proffer that the decedent made independent monetary payments or gifts to appellee or the child which she was unable to prove because of his inability to testify at trial. A merely speculative possibility that evidence or testimony which would support appellant's position was lost or unavailable due to appellee's delay in enforcing her claims is insufficient to establish the type of prejudice which would merit the application of laches.[3]

■ However, we find that the trial court allowed appellee to collect past due payments which matured more than twelve years before suit was filed in the instant case which, therefore, had expired and ceased to have effect. *See Lomax, supra* at 951; D.C.Code 1973, § 15–101(b). Accordingly, we vacate the judgment and remand this matter for a recalculation of the amount which appellee may collect.[4]

*Vacated and remanded.*

NEWMAN, Chief Judge, dissenting:

Although the majority concedes, as it must, the applicability of the laches defense in suits to enforce child support arrearages, *see Brandt v. Brandt,* 107 U.S.App.D.C. 242, 276 F.2d 488 (1960), it is clearly unhappy with the law on that subject in the District of Columbia, *see ante* note 2, at 48.[1] By applying the doctrine in what seems to me an unjustifiably narrow and grudging manner, it arrives at the conclusion that the defense fails under the facts of this case. I

---

3. Appellant argues that the fact that the beneficiary of the support payments reached majority five years before appellee filed her claim renders enforcement so unjust as to bar the claim under the laches doctrine. We find the age of the beneficiary irrelevant to an enforcement action in light of our view that child support payments mature into enforceable judgments as they come due. Furthermore, we fail to understand how the age of the child bears on the issues of detrimental reliance or lost evidence.

4. For the record we note that the procedure which appellee chose to pursue her claims in the trial court, while not improper, was perhaps more circuitous than necessary. As the court noted in *Kephart, supra* at 377, 193 F.2d at 681:

[i]t is perhaps convenient, and certainly not improper, for the court to enter a new judgment establishing of record the accrued installments which are unpaid .... But that procedure is not essential.... The wife's application for a writ of execution accompanied by her affidavit as to non-payment should move the issuance of the writ ....

Thus, a spouse seeking to collect past due support payments need not seek a judgment in the amount of the accumulated arrearages but may, instead, collect the past due payments by attachment and execution in accordance with the procedures specified in D.C.Code 1973, § 15–301 *et seq.; id.* § 16–541 *et seq.*

1. However, the unhappiness of a majority of a division is insufficient to effect a change in that law. *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

believe that appellee's suit, involving an unexplained nineteen year period in which she slept on her rights, presents a clear case for the application of the doctrine. Accordingly, I would reverse.

"The elements of laches ... are (1) undue delay, (2) unexplained delay, and (3) injustice to the other party." *Schmittinger v. Schmittinger,* D.C.App., 404 A.2d 967 (1979) (citing *Amidon v. Amidon,* D.C.App., 280 A.2d 82 (1971)). Each of these elements is met in the case at bar.

That appellee's delay in bringing suit was undue can hardly be disputed. Although the arrearages were persistent, by the time of suit appellee had failed to enforce her rights for approximately nineteen years. Seven years had elapsed since appellant's last voluntary support payment in 1972. In 1975 the child reached the age of majority, at which time the obligation to make further periodic support payments ceased. Thus, at any point thereafter, appellee could have sought the recovery of a single lump sum covering the entire amount that would ever be due. However, she failed to take any action until her husband had died without bequesting any of his estate to their daughter. At all times, both appellee and her former husband resided in the District of Columbia, and she was well aware of his whereabouts. That she knew how to enforce her rights is evident from the collection proceedings she instituted in 1960. Certainly under all these circumstances the delay was undue. Furthermore, it is undisputed that the record is devoid of any explanation, adequate or otherwise, for this delay. Thus, the second criterion is met.

It is the third element—injustice resulting from the delay—that the majority finds lacking. I would agree that prejudice is not to be inferred from the passage of time alone. *See* 24 Am.Jur.2d *Divorce & Separation* § 719 (1966), and cases cited at Annot., 5 A.L.R. 4th 1015, § 6(b) (1981). However, I would hold that the inordinate delay, when coupled with the intervening death of the obligor and the fact that the daughter had long since reached majority, establishes the injustice of allowing appellee to press her claim at this late date.

It has long been clear beyond dispute that the loss of evidence due to delay supports a finding of prejudice. *E.g., Levis v. Kengla,* 8 App.D.C. 230, 238–40 (1896). *See Powell v. Zuckert,* 125 U.S.App.D.C. 55, 59, 366 F.2d 634, 638 (1966) (citing *Levis*). It is sometimes possible for a party to prove that such evidence once existed. *See, e.g., Beiter v. Beiter,* 24 Ohio App.2d 149, 53 Ohio Op.2d 361, 265 N.E.2d 324 (1970). However, where the sole potential defense witness as to certain issues has died, such proof is impossible except in the fortuitous event that some other person was aware of the deceased's knowledge of relevant facts or possession of material documents. If appellee had brought suit during her former husband's life, he would have had the opportunity to prove any facts supporting his case, such as detrimental reliance on appellee's delay or her expressed acquiescence in his failure to continue support payments.

The majority rather quickly dismisses this problem on the ground that the possibility of lost evidence is merely speculative. By so doing, the husband is placed in a Catch-22 situation: latches is theoretically available on the basis of lost testimony, but his successor has no means of showing that it applies. The same circumstance leading to the possible loss of relevant testimony—the death of the husband—also prevents proof as to whether evidence actually was lost. Since it is appellee's undue and unexplained delay that led to this result, she, rather than the decedent, should bear the consequences. Moreover, under the majority's rule, the door is opened to fraud by the bringing of stale claims. If a debtor had a defense that only he and his former spouse were aware of, the spouse could unjustly defeat it by delaying suit until after the debtor's death. This is exactly the sort of danger that the laches doctrine is designed to, and should, eliminate. The policy at stake here is the same as is served by the Dead Man's Statute, D.C.Code 1981, § 14–302, which prevents a plaintiff from prevailing against an estate on the basis of uncorroborated testimony regarding a

transaction with the deceased. The statute recognizes that a swearing match between a live and a dead witness is inherently one-sided and unfair. Although the statute is not applicable in the present suit, the policy underlying the statute should also be given effect in the laches doctrine, where the plaintiff has delayed until after the defendant's death.

It is also well established that a change in position on the part of the obligor can support a finding of injustice.[2] *E.g., Amidon v. Amidon, supra.* In my view, a significant change in position was effected by the husband's death, at which time his estate passed to appellant. The former wife was apparently content to sleep on her rights during her spouse's lifetime, well past the time when her daughter reached her majority and her upbringing was no longer at stake. It was only after her former husband's will—which left the entire estate to his present wife, disinheriting the daughter—was administered that she came forward to resurrect her long-dormant claim. Under all the circumstances, it would be unjust to allow appellee to recover a stale debt from the wife of her deceased husband.

Finally, the trial court provided an alternative ground for its ruling: that appellant should be denied the benefit of the laches defense because of her deceased husband's alleged "unclean hands." Not surprisingly, the majority avoids addressing this ground. The sole basis for it is that the decedent voluntarily paid many installments of child support. Surely we cannot hold him to be in a worse position for having voluntarily complied with a legal obligation in part, while giving the benefit of the doctrine to parties who neglect their obligations entirely. The defense of laches is not available only to those who were unaware of, or contested their legal obligation.

Since in my view this case falls well within the proper scope of the laches doctrine, I would reverse.[3]

---

**2.** It is usually required that the detrimental change in position have been made in reliance on the former spouse's delay in bringing a claim. *See Amidon v. Amidon, supra,* and cases cited at Annot., 5 A.L.R. 4th 1015, § 6 (1981). Certainly Mr. Jasper's death was not a voluntary act taken in reliance on his former wife's laxity. However, I do not think that the few cases heretofore decided in this jurisdiction exhaust the circumstances that constitute the injustice calling for application of the laches doctrine. As indicated in the text, I think the death of the obligor is a circumstance that militates in favor of the conclusion that to recognize the stale claim would be an injustice satisfying the third requirement of *Amidon* and *Schmittinger.*

**3.** Since the majority reaches a contrary result, it will be necessary for the trial court to determine what part of the arrearages are uncollectible due to the expiration of the judgments on which they are based. As noted by the majority, the standards regarding the life of child support judgments are discussed in *Lomax v. Spriggs,* D.C.App., 404 A.2d 943 (1979). I would add only that, under that case, not all child support installments remain collectible for twelve years after they become due in the years spanned by this action due to legislative changes in the statute of limitations.