Frances PADGETT, Appellant,

v.

Thomas P. PADGETT, Jr., Appellee.

No. 82–1167.

District of Columbia Court of Appeals.

Argued Oct. 13, 1983.

Decided Jan. 25, 1984.

Joan Harvill, Fairfax, Va., for appellant.

John C. Lenahan, Washington, D.C., with whom Lawrence P. Lataif, Fairfax, Va., was on the brief, for appellee.

Before NEBEKER, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant served a writ of attachment on the federal agency responsible for disbursing appellee's retirement pay, seeking enforcement of a consent order directing appellee, her former husband, to pay child support and alimony. The trial court granted appellee's motion to quash the writ on the ground that appellant's claim was barred by laches. We agree with the trial court and appellee that laches is applicable generally to cases involving arrearages in court-ordered support payments, but we remand this case to afford the trial court a fresh opportunity to consider the laches claim in light of appellee's present financial condition.

I

The parties were married in 1943, separated in 1964, and were divorced in 1966. On September 8, 1964, after the separation, a consent order was entered requiring appellee to pay $183.53 bi-monthly to the Clerk of the Domestic Relations Branch of the Court of General Sessions (now the Superior Court) for the support of appellant and two of their three children.[1] The amount to be paid was subsequently modified on three occasions, the last such change occurring in April 1967. In March 1973 appellee discontinued making payments.[2] For the next nine years, until the service of the present writ in 1982, appellant made no attempt to collect the arrearages as they accrued under the consent order.

Appellant contends that the court erred in applying the doctrine of laches as a bar

1. The eldest child was then twenty years old and was not covered by the support order.

2. By that time the two children who were the beneficiaries of the child support order had reached the age of majority.

to her claim. First, appellant asserts that under D.C.Code § 15–101 (1981)[3] she had twelve years in which to seek enforcement of the money judgments arising from the support arrearages under the consent order, and thus laches did not apply at all. Second, she argues that even if the defense of laches could be raised, the court erred in its determination that it was viable in the instant case. Specifically, appellant maintains that her delay was not unexplained, that it was justified by her medical condition and her precarious financial situation and was therefore reasonable, and that in ascertaining whether appellee was prejudiced by the delay, the court erroneously failed to consider evidence relating to appellee's present financial condition. Only the last argument has merit.

## II

For the equitable defense of laches to be successful, the trial court must find "an undue and unexplained delay on the part of one party which works an injustice to the other party." Amidon v. Amidon, 280 A.2d 82, 84 (D.C.1971) (citations omitted); accord, Schmittinger v. Schmittinger, 404 A.2d 967, 970 (D.C.1979). If available, the defense of laches may bar an action, in whole or in part, for the collection of arrearages in child or spousal support payments under a divorce decree, Jasper v. Carter, 451 A.2d 46 (D.C.1982); Brandt v. Brandt, 107 U.S.App.D.C. 242, 276 F.2d 488 (1960), or under a separation agreement, Schmittinger v. Schmittinger, supra; Amidon v. Amidon, supra. In reviewing the trial court's ruling on laches, we must sustain its findings as to "the factual questions

bearing on prejudice to the defendant from delay and on the [plaintiff's] earlier awareness of the claim" unless they are clearly erroneous. American University Park Citizens Ass'n v. Burka, 400 A.2d 737, 741 (D.C. 1979). "Whether the facts, taken together, are sufficient to sustain the defense of laches, however, is a question of law which [we] will review without need for deference to the trial court's judgment." Id. (citations omitted).

Appellant contends that under D.C.Code § 15–101 (1981) and the holdings of Kephart v. Kephart, 89 U.S.App.D.C. 373, 193 F.2d 677 (1951) (en banc), cert. denied, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952), and Lomax v. Spriggs, 404 A.2d 943 (D.C. 1979), she had twelve years in which to bring her claims for arrearages under the consent order. Thus, appellant maintains, the court erred in even considering the claim of laches in the first place. We cannot agree.

In Kephart the court held that arrearages in periodic payments for child support and alimony under a divorce decree ripened into a series of individual money judgments from the date on which each payment became due. On the facts of the case, however, the court rejected the defense of laches, which was raised in the context of a contempt proceeding brought against the former husband for failure to meet his court-ordered support obligations. Because the facts did not support the claim of laches, "Kephart [did] not decide the question whether or not laches may be interposed as a defense to the enforcement of such judg-

---

**3.** D.C.Code § 15–101 (1981) provides in pertinent part:

(a) Except as provided by subsection (b) of this section, every final judgment or final decree for the payment of money rendered in the—

(1) United States District Court for the District of Columbia; or

(2) Superior Court of the District of Columbia,

when filed and recorded in the office of the Recorder of Deeds of the District of Columbia, is enforceable, by execution issued there-

on, for the period of twelve years only from the date when an execution might first be issued thereon, or from the date of the last order of revival thereof. . . .

(b) At the expiration of the twelve-year period provided by subsection (a) of this section, the judgment or decree shall cease to have any operation or effect. Thereafter, except in the case of a proceeding that may be then pending for the enforcement of the judgment or decree, action may not be brought on it, nor may it be revived, and execution may not issue on it.

ments." *Brandt v. Brandt, supra,* 107 U.S. App.D.C. at 244, 276 F.2d at 490. In *Lomax* this court followed *Kephart* and held that each arrearage in court-ordered support payments "became a separate judgment as of the date the payment fell due and that the life of each judgment [was] the twelve-year period specified in [D.C.Code § 15–101 (1981)] ...." *Lomax v. Spriggs, supra,* 404 A.2d at 945. We did not address the viability of the defense of laches, however, since it had not been considered by the trial court. Neither *Lomax* nor *Kephart,* moreover, involved arrearages in support payments under a consent order such as we have in this case. We must therefore decide initially whether arrearages under a consent order ripen into money judgments as they become due and payable, a question which has not yet been answered in the District of Columbia.

■ Although it is well established that support arrearages under a divorce decree ripen into money judgments, *Jasper v. Carter, supra,* 451 A.2d at 47–48; *Brandt v. Brandt, supra,* 107 U.S.App.D.C. at 244, 276 F.2d at 490; *Kephart v. Kephart, supra,* 89 U.S.App.D.C. at 380–381, 193 F.2d at 684, it is not at all clear that the same holds true for arrearages under a separation agreement which has not been incorporated into a divorce decree. *See McGehee v. Maxfield,* 256 A.2d 576, 578 & n. 5 (D.C. 1969); *Rosenbaum v. Rosenbaum,* 210 A.2d 5, 8 (D.C.1965). A consent order is like a separation agreement, insofar as it is a type of contract and places the parties in a contractual relationship. *Johnson v. Johnson,* 401 A.2d 962 (D.C.1979); *see Lanahan v. Nevius,* 317 A.2d 521 (D.C.1974). It is also, however, an order of the court, indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order. Thus we hold that, like support arrearages under a divorce decree, arrearages under a consent order ripen into money judgments.[4]

■ The next matter for us to consider is whether laches was a permissible defense in this case. We continue to have misgivings as to "whether laches should be available as a defense in an action which seeks to collect mature court-ordered support payments." *Jasper v. Carter, supra,* 451 A.2d at 48 n.2. Nevertheless, the court so held in *Brandt v. Brandt, supra,* with respect to support arrearages ripening into money judgments under a divorce decree. Given our holding that the arrearages in this case are indistinguishable from those in *Brandt,* in that both emanate from a court order, and being bound by the *Brandt* decision,[5] we conclude that laches was a viable defense.

### III

■ Appellant further argues that the court's findings with respect to the unreasonableness of her delay and the resulting prejudice to appellee were erroneous. While we agree with appellant that the findings on prejudice are deficient, as we shall discuss in part IV of this opinion, we uphold the court's findings on the unreasonableness of the delay.

During the nine years that elapsed between appellee's discontinuance of the support payments and the filing of the writ of attachment, appellant never asserted any claim for arrearages. She sought to explain this delay on the grounds that her divorce in 1966 greatly affected her mental state, causing her to seek treatment as an outpatient at Georgetown University Hospital for over a year. As a result, she testified, she "dreaded to come into court." From 1966 to 1973, however, appellant filed several motions to hold appellee in contempt of his obligations under the consent order, which led the trial court to conclude that appellant must have significantly overcome her fear of court proceedings in the course of those seven years.

---

4. We so intimated, although we did not squarely so hold, in *Trigo v. Riggs National Bank,* 338 A.2d 445, 450–451 (D.C.1975).

5. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

Appellee made no effort to conceal his whereabouts from appellant after he stopped making payments in 1973. He was often in contact with his three children, each of whom lived with appellant at various times between 1973 and 1981. Moreover, during the nine-year hiatus appellant was employed full time. The salary she earned was apparently sufficient for her needs, for it was not until retirement approached that she made any effort to go after the overdue support payments from her ex-husband. Appellant herself testified that she decided to seek the writ of attachment in the latter part of 1981 because she anticipated retiring in February of 1982 and "knew [that after her retirement she] was not going to get enough money to live on...."

Given this evidentiary record, we cannot say that the trial court erred in finding that appellant's delay was unreasonable.

## IV

■ After the parties were divorced, appellee remarried. He waited until two years had elapsed from the time he stopped making support payments before having a child with his new wife. Appellee testified, and the trial court found, that had it not been for appellant's failure to present any claim for the support arrearages, he would not have undertaken the financial responsibility of having another child. As a result, the court concluded that to force appellee to pay past-due alimony would cause him severe hardship. In making this finding, however, the trial court did not take into account appellee's present financial condition. The court determined that his financial status would be relevant to any request for further modification of the consent order, but declined to consider it as affecting the laches defense. We hold that this was error.

Generally, "[t]wo kinds of prejudice support a laches defense. Plaintiff's delay in

filing suit may have resulted in a loss of evidence or witnesses supporting defendant's position or the defendant may have changed [his] position in a manner that would not have occurred but for plaintiff's delay." *Gull Airborne Instruments, Inc. v. Weinberger,* 224 U.S.App.D.C. 272, 278, 694 F.2d 838, 844 (1982) (citation omitted); *accord, Jasper v. Carter, supra,* 451 A.2d at 48. The first kind of prejudice is not involved in this case; appellee has made no claim that any material evidence has been lost as a result of appellant's delay. As for the other kind of prejudice, however, there can be no dispute that appellee changed his position by starting a second family, and there is sufficient evidentiary support for the trial court's finding that he would not have done so but for appellant's delay in seeking enforcement of the support order.

■ But that is not the end of the inquiry. In *Schmittinger v. Schmittinger, supra,* we made clear that the defendant's financial condition is a factor that may affect the prejudice element of a laches defense. Concluding that the father in that case "had the financial capability to meet his obligation to pay arrears" in child support payments, we held that he "would suffer no injustice" from enforcement of that obligation and that the defense of laches was therefore not available to him. 404 A.2d at 970–971. *Schmittinger* is controlling here. Since the trial court, in ruling on appellee's claim of laches, declined to take his financial condition into account in deciding whether he would be prejudiced by enforcement of the writ of attachment, we must remand the case for reconsideration of this single issue. On remand the court shall determine the issue of prejudice *de novo,* taking into account appellee's present financial condition and any other factors which may be relevant. We also vacate paragraph 2 of the trial court's order, which appears to have been included in the order by mistake.[6] In all other respects we affirm the trial court's decision.

6. Paragraph 2 purports to deny "Plaintiff's Motion to Modify Order." The only motion filed

by appellant which sought to modify the consent order was one which asked that payments

*Affirmed in part, vacated in part, and remanded.*[7]

under the order be made directly to her rather than into the registry of the court. This motion was previously granted by another judge, and thus there was no "Motion to Modify Order" before the trial court at the time it ruled in this case. Paragraph 2 is therefore a nullity and should be vacated.

**7.** The consent order in this case was modified on three occasions, but only with respect to the amount of the support payments to be made by appellee. Neither the original order nor any of the three amendments drew a distinction between the sum attributable to child support and that attributable to alimony. At the time appellee ceased to make payments, the two children named in the consent order had both reached majority; one was then twenty-seven, and the other was twenty-four. While it is true that "there can be no modification of installments of alimony or support after they have become due under a previously entered decree," *Trezevant v. Trezevant,* 403 A.2d 1134, 1137 (D.C.1979) (citation omitted), the trial court will have to recompute the amounts of the arrearages due and owing if it ultimately decides that laches is not a valid defense in this case. "Such a recomputation ... [would] not amount to a retroactive modification of support payments which have fallen due, as the [consent] order could not legally require [appellee] to maintain [his children] after majority." *Nelson v. Nelson,* 379 A.2d 713, 716 n. 2 (D.C. 1977) (citations omitted); *see Spence v. Spence,* 266 A.2d 29 (D.C.1970). Thus there can be no arrearages due for the support of either child after that child's twenty-first birthday. The only possible obligation now remaining under the consent order is that of spousal support—*i.e.,* alimony—and whether that obligation is still binding will depend on the eventual resolution of the laches claim.