**Harold SCHMITTINGER, Appellant,**

v.

**Ruby M. SCHMITTINGER, Appellee.**

No. 13767.

District of Columbia Court of Appeals.

Argued May 15, 1979.

Decided Aug. 7, 1979.

Rehearing and Rehearing En Banc Denied Sept. 12, 1979.

John W. Karr, Washington, D. C., for appellant.

Charles H. Mayer, Washington, D. C., for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KELLY, Associate Judge:

Appellant Harold Schmittinger instituted proceedings in the trial court seeking vacation, modification, and/or clarification of a 1970 order ratifying a separation agreement between himself and Ruby Schmittinger, his former wife. The wife, in turn, sought specific performance of the separation agreement, payment of arrears, and an increase in child support. The trial court found for the wife and the husband brought this appeal, arguing that the trial court erred in construing the terms of the separation agreement, in failing to bar the wife's claims on the basis of waiver or laches, in finding that two of the couple's children were not emancipated, and in increasing the husband's child support payment obligation. We affirm.

After eleven years of marriage, the Schmittingers entered into a separation agreement in 1968. The agreement mandated that Mr. Schmittinger make monthly payments of $600 for the support of the couple's three children, make monthly payments of $500 for the support of his then wife, and purchase, for his then wife, a new car every three years. Later, the agreement was amended to raise the child support payment to $700 per month. Mrs. Schmittinger, who was given custody of the children, agreed to keep the children in Delaware, the domicile of all parties at the time of the agreement's execution, and allow Mr. Schmittinger reasonable visitation rights.

In 1972, the couple was granted an absolute divorce by a Delaware court. Although the agreement was ratified by the court, it was not merged into the divorce decree. Mrs. Schmittinger was remarried in 1973.[1]

Both parties breached the agreement, Mrs. Schmittinger moved, with the children, to the District of Columbia. In the eleven years after the execution of the agreement, Mr. Schmittinger purchased only one car for his former wife. Upon hearing of his former wife's remarriage, Mr. Schmittinger reduced his monthly payments by the $500 allocable to the wife. Mrs. Schmittinger took no action, until this suit was filed.[2]

In 1977, Mr. Schmittinger filed this suit in the Superior Court for the District of Columbia. He argued that he should not be forced to make payments to support his oldest daughter, who was attending college, and his middle daughter, who was living with her boyfriend outside her mother's home. Neither child had reached the age of emancipation for purposes of child support.[3] Mrs. Schmittinger requested that the court require the husband to pay the full amount required by the agreement, mandate payment of arrears, and increase the husband's child support obligation. On cross motions for judgment, the court denied the husband's motion and granted all aspects of the wife's cross motion. In determining the amount of increase in child support, the

---

1. Mrs. Schmittinger later divorced her second husband.

2. Some five years passed between the cessation of payments and the filing of this suit.

3. The agreement stated that the support obligation would continue until the children reached their majority, which is the age of 21.

court referred solely to the increase in the consumer price index.

## I

■ Appellant's first argument is that the court erred in its construction of the portion of the separation agreement that deals with the wife's remarriage and the effect of that occurrence on the husband's obligation to make support payments to the wife. The separation agreement provides:

(2) Husband shall hereafter pay to Wife the sum of $1100.00 per month on the fifteenth day of each month during the minority of the parties' children. $600.00 per month shall be for the support of the parties' three children ($200 × 3 = $600.00) and $500.00 per month shall be for the support of the Wife. During the minority of the parties' children, Wife shall maintain and support them, it being the intent of this Agreement that during the period of such minorities, the aforesaid payments shall be for the maintenance and support of said children, as well as Wife. In addition to said payments, Husband shall pay all the expenses of educating said children for so long as they or any of them shall remain in school or college, and shall pay all their extraordinary medical, surgical, hospital and dental expenses. After said children have reached their majority, Husband shall continue to pay to Wife $1100.00 per month for her personal support and maintenance unless and until she shall remarry.

Appellant argues that the agreement is ambiguous in relation to a situation in which the wife remarries during the minority of the children. The trial court having found that ambiguity, appellant's argument continues, it abused its discretion by admitting and crediting evidence of the wife's understanding, while rejecting the husband's evidence as to the meaning of the provision.

Appellant's contention contains three subparts; we disagree with each of them. First, there is no ambiguity. A contract is ambiguous only if there can be no reasonable and consistent interpretation of the words used derived from the face of the contract. This contract specifically states that the husband must pay $1100.00 per month (later $1200.00) during the minority of all the children, and the payments must continue beyond that time unless the wife remarries *after* all of the children reach majority. The sole exception to the requirement that the husband pay the full sum for life of the wife is exclusive; only when all three children reach majority *and* the wife remarries would the husband's support obligation be affected.

Second, the trial court made no finding of ambiguity. Appellant relies, to some extent, on the trial court's finding of fact that "from the plain language of the agreement as well as from the representations made by [the husband, in prior proceedings] . . it was the intention of the parties that the support payments . . ." were to continue through the minority of the children, as evidence that the trial court found ambiguity and resolved it by resort to parol evidence. It is clear, however, that the court looked first to the language of the agreement and made reference to parol evidence only to support its findings based on the face of the contract.

At any rate, the record is replete with statements of appellant's intentions in signing the separation agreement. At one point in the proceedings, Mr. Schmittinger testified:

Well, my intent was to provide support for [the wife] until such time as she remarried because the law in the State of Delaware for one thing was to the effect that I had no obligation to support her beyond the remarriage. . . . If she did not remarry, I specifically said I would continue supporting her at the rate of $1,200.00 a month. As a matter of fact, she did remarry and the month that she remarried I reduced the payment by the $500.00 provided for her . . ..

The trial court heard, but apparently did not credit, appellant's testimony.

Appellant argues that the trial court's failure to state explicitly why it did not credit appellant's testimony is reversible er-

ror. For this proposition, appellant relies on *O'Meara v. O'Meara,* D.C.App., 355 A.2d 561 (1976), and *Butler v. Butler,* D.C.App., 239 A.2d 616 (1968). Such reliance is misplaced. In *O'Meara,* "the trial judge stated merely that he had taken into consideration the testimony, reports, and recommendations of the social agencies." *Id.* 355 A.2d at 562. In *Butler,* there were no findings of fact or conclusions of law. And even in the light of that total omission, this court did not remand there since we found that "there is no need to choose between conflicting inferences or to surmise the basis upon which a finding was made, this record presents no impediment to appellate review." *Butler v. Butler, supra* 239 A.2d at 617. In the present case, the findings of fact and conclusions of law, as well as the record of the case, amply support the determination of the trial court.

## II

■ Appellant next contends that the wife's action for arrears should have been barred either by the doctrine of waiver or by the doctrine of laches. While we note that the doctrine of waiver, as pertains to this situation, has not been adopted in this jurisdiction, as indeed it has not been adopted in most jurisdictions, and while we note that there does not appear to be a convincing rationale to adopt that doctrine now, we do not pass on the merits of the claim. The defense of waiver was not raised below, and it cannot, therefore, absent extreme circumstances, be raised on appeal. *See, e. g., Dietz v. Miles Holding Corp.,* D.C.App., 277 A.2d 108 (1971); *Bullock v. Young,* D.C. Mun.App., 118 A.2d 917 (1956).

■ The law on the subject of laches was succinctly stated in *Amidon v. Amidon,* D.C. App., 280 A.2d 82 (1971). There the court stated the test for a finding of laches:

Laches is a valid defense in equity when the court finds an undue and unexplained delay on the part of one party which works an injustice to the other party. . . . [*Id.* at 84.]

The elements of laches, therefore, are (1) undue delay, (2) unexplained delay, and (3) injustice to the other party.

We need look only to the third element, as we find that there occurred no injustice to the other party.

In *Amidon,* the injustice to the other party, the husband, stemmed from his payment, over seven years, of "between $12,000 and $14,000 to send their son to private school which he could not have afforded had he also been paying maintenance to her." *Id.* In *King v. Kitchen Magic, Inc.,* D.C. App., 391 A.2d 1184 (1978), a case upon which appellee relies, this court noted that the determination of whether the defense of laches is available is one appropriately made by the trial court. *Id.* at 1187.

■ Appellant asserted at trial that he suffered prejudice similar to that suffered by the husband in *Amidon* ; that is, that he made expenditures, for investment purposes and on his children, that he would not have otherwise made. He also asserted that as a result he could not afford to pay his arrears. The trial court found, however, as a matter of fact that

13. That the plaintiff is a successful practicing attorney whose net worth is approximately $325,000.00 to $350,000.00; that his income after expenses but before income taxes in the year 1968 was approximately $81,000.00 and that it has gradually increased between 1968 and 1977 so that in 1977 such income was approximately $130,000.00; that in addition to the aforesaid amounts of income plaintiff has set aside in retirement plans various sums each year, most recently at the rate of $15,000.00 per annum.

Since this finding is supported by substantial evidence and is not clearly erroneous, *see e. g., Julian W. Curtis Co. v. District-Realty Title Insurance Corp.,* D.C.App., 267 A.2d 830 (1970); *Smith v. Smith,* D.C.App., 210 A.2d 831 (1965); *DeWitt v. DeWitt,* D.C.App., 201 A.2d 527 (1964), we accept it on appeal and conclude that appellant had the financial capability to meet his obligation to pay arrears. His investments and generous payments beyond his contractual obligation to his children notwithstanding,

appellant would suffer no injustice from the trial court's mandate.

### III

■ Appellant's third argument, that two of his children have been emancipated, requires little discussion at this juncture. Regardless of the persuasiveness of appellant's arguments on the merits, it is clear that the separation agreement calls for him to pay child support until all three children have reached their majority.

The agreement states:

(2) Husband shall hereafter pay to wife the sum of $1100.00 per month . . during the minority of the parties' children. . . .

The trial court found as fact that "it was the intention of the parties that the support payments of $1100.00 per month . . . were to continue in any event until all three of the minor children of the parties reached the age of 21 years . . . ." That finding was not clearly erroneous.

### IV

■ Appellant's final argument is that the trial court erred in referring solely to the rise in the consumer price index in order to compute the increase in his child support obligation. Appellant's argument is syllogistic. He notes first that *Sheridan v. Sheridan*, D.C.App., 267 A.2d 343, 347 (1970), allows a trial court to increase child support payments measured solely on an increase in the cost of living if that sole reliance were "in a proper exercise of discretion." *Id.* In the exercise of that discretion, the trial court must find "a substantial change in the requirement of the minor children." *Id.*[4]

In order to complete the syllogism, appellant does not argue that the children's financial situation has not changed. Rather, he argues that to the extent that the oldest daughter is in college and receives a monthly allowance from him, and the middle daughter lives with her boyfriend,[5] and by design, received no cash payments from her mother,[6] it was an abuse of discretion to increase the child support obligation for all three children.

Appellee counters that, regardless of the current status of the two daughters, the expenses of maintaining the house were not diminished by the absence of the daughters. Moreover, according to appellant, since the eldest daughter returns home for vacations and the middle daughter returns home for some meals and the like, the wife must keep and maintain the home.

The court accepted this rationale, and so must we. There was evidence adduced at trial to show that the oldest child came home from college during most vacations and that the middle child visited her home to eat, do laundry, and other activities from time to time. Most importantly, there was evidence that the only major diminution in household expenses was in the area of food, and that diminution was small. .

The trial court's finding of fact was not clearly erroneous. *See* discussion *supra.* Therefore, we uphold it.

Since we find no error on the part of the trial court, the judgment of the trial court is

*Affirmed.*

---

**4.** In *Sheridan*, this court found that there was no support in the record for the proposition that the children had experienced a substantial change in their needs. This court, therefore, reversed the judgment of the trial court and reinstated the original order. *Id.*

**5.** At the time of this appeal, the middle daughter was married to her boyfriend. That fact, of course, has no impact on this case.

**6.** The father did make cash payments to the middle daughter.