Ruby M. SCHMITTINGER,
Appellant/Cross–Appellee,

v.

Harold C. SCHMITTINGER,
Appellee/Cross–Appellant.

Nos. 87–83, 87–84.

District of Columbia Court of Appeals.

Argued Dec. 16, 1987.
Decided March 15, 1988.

Charles H. Mayer, Washington, D.C., for Ruby M. Schmittinger.

William G. McLain, with whom John W. Karr, Washington, D.C., was on the brief, for Harold C. Schmittinger.

Before MACK, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Before us for a second time is a dispute concerning the correct interpretation of a separation agreement entered into in 1968 by Harold C. Schmittinger and Ruby M. Schmittinger. They were divorced four years later, and Mrs. Schmittinger remarried. In the first appeal, we held that Husband[1] was obliged to continue making support payments for both Wife and their minor children notwithstanding her remarriage. *Schmittinger v. Schmittinger*, 404 A.2d 967 (D.C.1979). The youngest of such children has now reached the age of majority. Prior thereto (indeed prior to the decision in the first appeal), Wife had divorced her second husband. Therefore, at the time the youngest child came of age, Wife had resumed her unmarried status. So far as we know, she remains so to this day.

On this appeal, the substantive issue before us is whether Husband must continue making support payments. The trial court held that he need not. We are also presented with a procedural issue, namely, whether Wife's appeal from the trial court's decision is properly before us. We hold, on the procedural point, that the matter is properly before us and, on the substantive point, that the trial court erred in failing to follow the interpretation of the separation agreement set forth in the prior appeal.

## I. *The Facts*

After eleven years of marriage and three children, the Schmittingers entered into a separation agreement in 1968. In 1972, the couple was granted an absolute divorce by a Delaware court. Wife remarried in 1973 but was again divorced several years later, sometime prior to mid–1978.

The critical provision of the separation agreement that featured in both the prior and the present appeals to this court is paragraph 2:

(2) Husband shall hereafter pay to Wife the sum of $1100.00 per month on the fifteenth day of each month during the minority of the parties' children. $600.00 per month shall be for the support of the parties' three children ($200 × 3 = $600.00) and $500.00 per month shall be for the support of the Wife. During the minority of the parties' children, Wife shall maintain and support them, it being the intent of this Agreement that during the period of such minorities, the aforesaid payments shall be for the maintenance and support of said children, as well as Wife. In addition to said payments, Husband shall pay all the expenses of educating said children for so long as they or any of them shall remain in school or college, and shall pay all their extraordinary medical, surgical, hospital and dental expenses. After said children have reached their majority, Husband shall continue to pay to Wife $1100.00 per month for her personal support and maintenance unless and until she shall remarry.

Upon Wife's remarriage in 1973, Husband reduced his monthly payments under paragraph 2 by $500.[2] He took the position that his obligation to make that portion of the monthly payments ascribed to "sup-

---

1. Following the format of the separation agreement, we shall refer in this opinion to Harold C. Schmittinger as "Husband" and Ruby M. Schmittinger as "Wife."

2. The $1100 monthly payment called for by paragraph 2 had been increased by $100 pursuant to an amendment dated March 31, 1972. The $100 increase was entirely allocated to child support. The child support element of the monthly payment was further increased in the prior appeal to reflect cost of living increases.

port of the wife" terminated upon Wife's remarriage. In the prior appeal, we rejected that argument. We said, in language that is a focal point of this second appeal:

> [T]here is no ambiguity. A contract is ambiguous only if there can be no reasonable and consistent interpretation of the words used derived from the face of the contract. This contract specifically states that the husband must pay $1100.00 per month (later $1200.00) during the minority of all the children, and the payments must continue beyond that time unless the wife remarries *after* all of the children reach majority. The sole exception to the requirement that the husband pay the full sum for life of the wife is exclusive; only when all three children reach majority *and* the wife remarries would the husband's support obligation be affected.

*Id.,* 404 A.2d at 969 (emphasis in original).

Our opinion was issued on August 7, 1979, and Husband's petition for rehearing and rehearing en banc was denied on September 12, 1979. Less than five years later, strife again broke out. In October 1983, the couple's youngest child reached the age of majority and a few months thereafter, in June 1984, Husband ceased making any monthly payments.[3] In December 1984, Wife filed a motion to adjudicate Husband in contempt and for a judgment of arrears. The motion was based upon the trial court's specific performance order which had been affirmed in the prior appeal and our interpretive language quoted above. (The order itself was silent as to its effect after the youngest child reached majority.) Husband filed an opposition, asserting that the language was "dicta in its most classic form." (As subsequently elaborated, Husband's position was that the agreement simply created two conditions for the termination of support: (1) remarriage by his former wife and (2) the majority of the children.) Oral argument was heard on February 25, 1985.

On April 15, 1985, the trial court signed an order denying Wife's motion. The order was filed in the office of the clerk of the Family Division on April 18, 1985, and entered on the docket sheet on May 8, 1985. The docket entry was in handwriting and ended with the notation "c/m", which we understand to mean "copies mailed."

In fact, counsel for neither party received a copy of the order or were otherwise aware that it had been entered. On July 26, 1985, counsel for Wife learned of the decision while tending to another unrelated matter before the court. He immediately contacted the Acting Chief Deputy Clerk of the Family Division, who verified the failure of both parties to receive notice of the order. On July 31, 1985, purporting to act under Super.Ct.Civ.R. 60, the clerk made a new docket entry striking the earlier entry of May 8, 1985, and entering the order as of July 31, 1985. The following day, Wife filed a notice of appeal from the order denying the motion, and pursued several subsequent steps in the appeal process.

On March 26, 1986, Husband filed a motion in this court to dismiss the appeal on the ground of untimely filing of the notice of appeal. On June 23, 1986, we issued an order stating simply that the appeal was dismissed. Upon Wife's motion for reconsideration and/or clarification, we issued a second order on September 26, 1986, with the following language:

> This court finds that the relief appellant sought below was Rule 60(b) relief. Without ruling on the merits of a Rule 60(b) motion, this court notes that the clerk was without authority to grant Rule 60(b) relief. *See* Super.Ct.Civ.R. 77–II. Rule 60(b) relief should be granted only after consideration by the trial court of a formal motion and opportunity for a formal response.

> Accordingly, the appeal is dismissed without prejudice to appellant filing a formal Rule 60(b) motion in the trial court.

---

**3.** The reason for the delay in ceasing payments is unclear. It may have been related to the completion of the college year.

On October 1, 1986, Wife filed a motion for relief under Rule 60(b), asking that the May 8, 1985 docket entry be vacated and the order re-entered so that Wife might enter a timely appeal from it. The motion was granted in a written order pursuant to Super.Ct.Civ.R. 60(b)(6).[4] The court found that the motion had been filed within a "reasonable time," as required by the rule, and as authority for granting the relief relied upon *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 163 U.S.App.D.C. 140, 500 F.2d 808 (1974). The court found that Wife met the three-prong test set forth in that case for allowing relief under Rule 60(b)(6).

Husband and Wife took cross-appeals to this court. Wife filed a notice of appeal from the order of April 15, 1985, as re-entered pursuant to the grant of her 60(b) motion. Husband appealed from the grant of the 60(b) motion. These combined appeals are now before us for decision.

## II. *The Rule 60(b) Motion*

We begin our analysis with the challenge to the trial court's granting of Wife's motion under Super.Ct.Civ.R. 60(b)(6).[5] Husband's assertion is that the last sentence of Super.Ct.Civ.R. 77(d) bars the trial court from granting relief for failure to file a

timely appeal on the ground that the prospective appellant did not receive notice of the judgment or order sought to be appealed from.[6] He acknowledges that the case relied upon by Wife permits the trial court to grant relief in the circumstances presented here. However, he asserts, the precedential value of that decision has been undercut and in any event, its holding should not be followed by us.

In the case invoked by Wife, *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution, supra,* the court held that a "trial court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal when neither party had actual notice of the entry of judgment, when the winning party is not prejudiced by the appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry." 163 U.S.App.D.C. at 142, 500 F.2d at 810. As two subsequent cases from the District of Columbia Circuit have stated, the *Expeditions* holding forms a narrow exception to the normal rule that a party may not use the failure to receive notice of the entry of an order or judgment as the ground for relief under Rule 60(b). *Polylok Corp. v. Manning,* 253 U.S.App.D.C.

---

**4.** That provision authorizes the court to relieve a party from a final judgment, order or proceeding for "(6) any other reason justifying relief from the operation of the judgment."

**5.** Wife's counsel did not learn about the order of April 15, 1985 (entered on May 8, 1985) denying her motion until July 27, 1985. At that time, he believed, the time to file an appeal as of right had expired under our Rule 4(a)(1): "A notice of appeal in a civil case shall be filed with the Clerk of the Superior Court within thirty days after entry of the judgment or order from which the appeal is taken...." Furthermore, no possibility existed for him to obtain an extension of time under our Rule 4(a)(4): "Upon a showing of excusable neglect, the Superior Court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by paragraph (1)."

**6.** Rule 77(d) in its entirety reads:
(d) Notice of orders or judgments. Immediately upon the entry of an order or judgment signed or decided out of the presence of the parties or their counsel, the Clerk shall serve

a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these Rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. *Lack of notice of the entry by the Clerk does not affect the time to appeal or relieve or authorize the Court to relieve a party for failure to appear within the time allowed, except as permitted in the Rules for the District of Columbia Court of Appeals.* (Emphasis added.)

The comparable Federal Rule 77(d) is almost identical in wording. The last sentence represents a 1946 amendment intended to avoid such situations as that arising in *Hill v. Hawes,* 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), where the Supreme Court held that where the clerk had failed to give notice, the district court had power to vacate a judgment and re-enter it for the purpose of reviving the right of appeal. The concern expressed by the advisory committee was that the *Hill v. Hawes* result "seriously affects the finality of judgments."

332, 793 F.2d 1318 (1986); *Ashby Enterprises, Ltd. v. Weitzman, Dym & Associates*, 251 U.S.App.D.C. 25, 780 F.2d 1043 (1986).

Husband points out that these two more recent cases have questioned the correctness of *Expeditions* holding and its continued validity. However, what is overlooked is that while the court rules in the federal system are in a great many respects identical to those governing our court system and therefore case law is normally readily interchangeable, such is not true here. There is a crucial difference in the provisions governing the running of the time to appeal. In the federal system, the giving of notice to counsel has no bearing whatever. However, in our court rules, such notice by the clerk is a material element in the running of the appeal time.

■ Both of the rules require the filing of a notice of appeal within thirty days after "entry of the judgment or order" appealed from.[7] The difference is in the definition of when a judgment or order has been "entered." Fed.R.App.P. 4(a)(6) simply refers to the relevant sections of the Federal Rules of Civil Procedure which deal with the mechanics of entry. Our appellate rules, however, contain a separate definitional provision. Prior to our 1985 amendments, our D.C.App.R. 4(II)(a)(3) read:

> (3) Entry of judgment or order. A judgment or order is deemed to be entered when it is entered in the civil docket by the Clerk. When a judgment or final order is entered or decided out of the presence of the parties and counsel and without previous notice to them of the Court's decision, such judgment or order shall not be considered as having been entered, for the purpose of computing the time for filing a notice of appeal, until the 3rd day after notice thereof has been mailed to the parties or counsel by the Clerk of the Superior Court. The Clerk shall make an entry in the records

of his office reflecting the fact of notice thereof by mail.

Thus, the actual act of mailing of notice by the clerk was essential to the computation of appeal time.

■ An identical provision in the subsection dealing with criminal appeals, D.C. App.R. 4(II)(b)(4), led to troublesome problems of timing. *See, e.g., Samuels v. United States*, 435 A.2d 392 (D.C.1981) (in absence of docket entry or other proof of mailing by clerk, time for appeal runs from appellant's receipt of actual notice of order; proof of mailing by clerk is necessary; mailing from judge's chambers is insufficient); *Williams v. United States*, 412 A.2d 17 (D.C.1980). In our extensive 1985 amendments the civil appeals rule was revised to the form applicable to the case before us: "When a judgment or final order is entered or decided out of the presence of the parties and counsel, such judgment or order shall not be considered as having been entered, for the purpose of calculating the time for filing a notice of appeal ... until the fifth day after the Clerk of the Superior Court has made an entry on the docket, including microfilmed entry, reflecting the mailing of notice by that clerk." D.C.App.R. 4(a)(3). (A like change was made in the criminal appeals rule, 4(b)(4).) The amended rule both extends the appeal time from three to five days where notice is mailed and makes the date of entry on the docket, rather than the actual date of mailing, the measuring date. But in our view, it was not intended to and did not affect the fact that actual mailing of notice by the clerk was a material step in the process.

We therefore conclude that the holding of *Expeditions* makes sense in the context of our rules structure. Where neither party has received notice from the clerk through the mails, it is a significant indication that no such notice was in fact mailed by the clerk. Rather than treating this as a factual question obviously difficult of definitive determination, it seems to us that

---

**7.** Fed.R.App.P. 4(a)(1) requires filing "within 30 days after the date of entry of the judgment or order appealed from." Our comparable D.C.

App.R. 4(a)(1) requires filing "within thirty days after entry of the judgment or order from which the appeal is taken."

the granting of 60(b) relief by a trial court, within the *Expeditions* strictures, should be an allowable discretionary act.[8] We so hold.

Such a result is foreshadowed by our two opinions on a related issue. In *Pryor v. Pryor*, 343 A.2d 321 (D.C.1975), relied on by Husband, it appears that the court assumed that notice had been properly mailed, as indicated by the record. The opinion gives no indication that opposing counsel had not received the notice. We held that the trial court did not abuse its discretion in refusing to find "excusable neglect" for purposes of granting an extension under then D.C.App.R. 4(II)(a)(4).[9] However, subsequently, in *Murville v. Murville*, 433 A.2d 1106 (D.C.1981), we were faced with a grant of a thirty-day extension of appeal time where the trial court found that no notice of the entry of the order denying the new trial motion was sent to any counsel of record. We upheld the trial court's discretion in granting such an extension, noting that in *Pryor*, we had held that "lack of knowledge of the entry of the judgment, *alone and without more*, does not constitute a showing of excusable neglect." 433 A.2d at 1108 n. 1 (emphasis in original). While these two cases involve an extension of time under 4(II)(a)(4), now 4(a)(4), rather than a request for relief under 60(b)(6), the distinctions drawn there seem relevant here as well.

■ Husband argues that in any event, the trial court erred in holding that Wife filed her 60(b) motion "within a reasonable time."[10] We do not think that this finding can be successfully challenged in the precise unusual situation before us. Wife's counsel relied upon an action taken by the clerk's office in good faith and after investigation. Furthermore, Husband did not challenge the propriety of the appeal before us until eight months after the appeal was filed. There is no indication of lack of diligence by Wife in the proceedings. We therefore must now turn to the merits.

### III. *Interpretation of the Agreement*

■ Both parties agree that the dispute between them is governed by the above-quoted language in paragraph 2 of the separation agreement.

Wife mainly relies on the assertion that the issue now before us was authoritatively dealt with in the prior appeal. She points in particular to the language in the prior opinion which stated: "The contract specifically states that the husband must pay $1100.00 per month (later $1200.00) during the minority of the children, and the payments must continue beyond that time unless the wife remarries *after* all of the children reach majority." 404 A.2d at 969 (emphasis in original). Nothing could be clearer in the English language, she asserts, and therefore our inquiry is at an end.

Husband basically deals with this argument by observing that the quoted sentence was dictum, unnecessary to the holding and therefore not controlling. Perhaps

---

**8.** In the context of Husband's argument based on the last sentence of Rule 77(d), an exception can thus at least impliedly be found "as permitted in the Rules for the District of Columbia Court of Appeals." *See* note 6, *supra*.

**9.** *See* note 5, *supra*. Fed.R.App.P. 4(a)(5) is similar to our R. 4(a)(4) in allowing a thirty-day extension. In 1979, the federal rule was expanded to allow an extension to be granted for "good cause" as well as "excusable neglect."

**10.** The possible interplay between Rule 60(b)(1) and Rule 60(b)(6) is curious. The former provides for relief from a judgment or order on grounds of "mistake, inadvertence, surprise, or excusable neglect," and requires the filing of the motion within one year after the entry of the ruling complained of. The latter allows relief "for any other reason" and permits the filing of a motion "within a reasonable time." If a motion such as that before us can be made only under Rule 60(b)(1), then Wife's motion came too late. However, such relief has been treated as properly sought under Rule 60(b)(6), as in the *Expeditions* case itself. *See, e.g., Cavalliotis v. Salomon*, 357 F.2d 157 (2d Cir.1966) (motion filed 18 months after order). Husband argues that in any event, after learning of the ruling, Wife should have filed the motion within the thirty days allowed for appeal if notice had been properly sent. As indicated, we do not think that Rule 60(b)(6) necessarily requires such an absolute time limit in the circumstances of this case.

more precisely put, however, would be the assertion that the quoted sentence dealt with a factual situation not actually then before the court, namely, the circumstances under which payments were required to be made by the husband once all the children reached majority. It does not follow, however, that the statement was mere dictum. That depends upon whether the quoted interpretation of the contract was a necessary element of the reasoning which led to the result in the prior opinion.

In the prior appeal, Husband was attempting to reduce his monthly payments by the amount of $500 per month, which in the agreement was stated to be "for the support of the Wife." As this court stated the issue, Husband's argument was "that the court erred in its construction of the portion of the separation agreement that deals with the wife's remarriage and the effect of that occurrence on the husband's obligation to make support payments to the wife." 404 A.2d at 969. Thus, the court's attention was specifically drawn to the last sentence of paragraph 2, since it is only that sentence which "deals with the wife's remarriage." The court found the agreement unambiguous on the point. It held that the only event that could terminate the obligation to make payments to the wife was the wife's remarriage "after" (and the court italicized the word to leave no doubt) all of the children reach majority. Thus, the court reasoned, her marriage prior to that point did not affect the husband's support obligation.

Put another way, the question addressed by the court was under what circumstances Husband's obligation to make payments under paragraph 2 would be affected by remarriage. The court answered that by saying that the obligation was not affected in any way unless the wife remarried *after* the children reached majority. In our view, then, this court was focused directly on the issue now before us and its answer to that question was determinative of the decision in our prior case. The grounds were clear from the face of the opinion.[11]

We observe also that Husband, who is an experienced attorney, did not challenge this exact point of the opinion in his petition for rehearing filed with this court. At the time of the prior decision, Wife had already divorced her second husband, and it was certainly foreseeable that the precise situation now presented might arise when the youngest child reached majority, an event little more than four years in the future.

In sum, whether the substantive issue before us be characterized as one of issue preclusion [12] or law of the case,[13] we think

---

11. An alternative line of interpretation could have upheld the judgment below without reaching the question of the timing of Wife's remarriage. The agreement is unusual in that while it provides for $600 of the $1100 payment to be allocated to support of the children and $500 to support of Wife, the full $1100 is payable until the youngest child reaches majority; that is, the payments are not reduced by $200 as each child reaches majority. Furthermore, it obligates Wife to bear the overall responsibility to maintain and support the children, it being the parties' intent "that during the period of such minorities, the aforesaid payments shall be for the maintenance and support of said children, as well as Wife." With Wife assuming responsibility for the children's support and with Husband's payments specifically labeled as inclusive of that end, it could be said that Wife's remarriage during minority would not affect the obligation to pay the full $1100, even absent the last sentence in paragraph 2. We did not follow this line of reasoning, however. Instead, we looked specifically to the last sentence and interpreted it as indicated above.

12. RESTATEMENT (SECOND) OF JUDGMENTS § 27: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *See, e.g., Jonathan Woodner Co. v. Adams,* 534 A.2d 292 (D.C.1987); *Ali Baba Co., Inc. v. Wilco, Inc.,* 482 A.2d 418 (D.C.1984).

13. *Minick v. United States,* 506 A.2d 1115, 1116 (D.C.1986) ("'once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court'" (citation omitted); *Smith v. United States,* 406 A.2d 1262 (D.C.1979). *See also* 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (1981 & 1987 Supp.).

this court's prior determination was dispositive. Accordingly, the trial court's order granting the wife's motion for relief under Rule 60(b), the subject of No. 87–84, is affirmed. The trial court's order denying the wife's motion to adjudicate the husband in contempt and for a judgment of arrears, the subject of No. 87–83, is reversed and the case remanded for further proceedings consistent with this opinion.

*So ordered.*