DISTRICT OF COLUMBIA, Appellant,

v.

O.B. WATKINS, Appellee.

Nos. 94–CV–377, 94–CV–422.

District of Columbia Court of Appeals.

Argued Sept. 26, 1995.
Decided Oct. 31, 1996.

Phillip A. Lattimore, III, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Mark R. Thompson, Washington, DC, for appellee.

Before WAGNER, Chief Judge, and FARRELL, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

These consolidated appeals arise out of a negligence suit filed by O.B. Watkins against the District of Columbia (District) alleging that, while he was incarcerated under the District's custody, the District negligently failed to provide him with pain-killing medication as a result of which he suffered temporary paralysis, fell down a flight of steps and sustained severe, permanent injuries. A jury returned a verdict for Watkins in the amount of $125,000. The trial court denied the District's post-trial motion for judgment notwithstanding the verdict by an order docketed on October 5, 1993. In a motion filed on January 7, 1994, the District sought relief from the court's order of October 5, 1993, contending that it had never received notice of the entry of the order, and therefore did not file a timely appeal. The trial court vacated its original order and entered another order on February 22, 1994, which was docketed on February 25, 1994 and mailed on February 28, 1994. The principal issue raised by Watkins in his appeal is whether the trial court abused its discretion in vacating its first order and entering a new one. In its appeal, the District raises three arguments in support of its request for reversal: (1) Watkins failed to establish the standard of care for the health care providers who treated him; (2) Watkins failed to prove proximate cause; and (3) the verdict was excessive. We hold that, where as here, it was established that the clerk of the court failed to mail notice of the entry of the order to the last known address of record of the District, the trial court did not abuse its discretion in finding unique circumstances warranting setting aside its original order. We also conclude that the trial court did not err in denying the District's motion for judgment notwithstanding the verdict (JNOV), or in the alternative, for a new trial. Accordingly, we affirm.

## I. Factual Background of the Claim

According to the evidence, Watkins injured his back in 1976 while operating a bulldozer. He ruptured four discs in his back as a result of which he had chronic low back pain, which was treated with anti-inflammatories and Motrin. In 1978, Watkins underwent surgery, a laminectomy.[1] According to Watkins, the surgeons removed a piece of his hip bone to fuse his spine, and the operation left his leg "paralyzed." Since 1985, Watkins has used a back brace and a cane to walk, and a "tens unit" (electrical stimulator) to reduce the pain.

In the spring of 1988, Watkins was convicted of carrying a pistol without a license and sentenced to ninety (90) days in jail. Initially, he was detained at the D.C. Jail where he was given a physical examination and one Motrin pill three times a day. For security reasons, personnel at the jail took his cane. On February 23, 1988, Watkins was transferred to a minimum security facility at Occoquan where he was given a prescription to take three Motrin tablets a day for five days. By March 10, 1988, with only two pills left, he requested a refill at the facility's medical unit, and he was instructed to return later. When he returned on March 14, 1988, he received a prescription to take Motrin three times a day for fourteen days, which lasted until March 27, 1988. On March 28, 1988, Watkins returned to the infirmary complaining of back pain, tingling in his legs, and pain in his ankles and knees, and requested Motrin. A physician's assistant, Mr. Stroman,

---

1. According to the District, a "laminectomy is a 'surgical chipping away of the thin bony arches—laminae—of one or more vertebrae, done to relieve compression of the spinal cord. The cause may be a bone displaced in an injury or the breakdown of a cartilage disc. Fusion of some vertebrae may be necessary for spinal stability if several laminae are removed.'" See SIGNET/MOSBY MEDICAL ENCYCLOPEDIA 337 (1985).

examined Watkins and refused his request. Stroman scheduled an MRI for Watkins and referred him to an orthopedic specialist, Dr. Smith. Later that evening Watkins was given the MRI and again requested Motrin. The staff informed him that they were authorized only to perform the x-ray examination.

Two days later, on March 30, 1988, Watkins, who was in pain and unable to walk, was carried to the infirmary where Dr. Smith examined him and prescribed Motrin for pain. Watkins testified that Dr. Smith instructed him to tell his correctional officer "to call Dr. Stroman and have him get some Motrin over to me." Watkins said he relayed Dr. Smith's instruction to a correctional officer, James. Officer James telephoned Stroman and requested the Motrin. However, the Motrin was not given to Watkins.

Later that day, around 6 or 6:30 p.m., Watkins told Sergeant Dalton that he was "hurting all over." Sergeant Dalton and Officer James decided to take Watkins to the infirmary. On the way there, Watkins' legs buckled under him, and he fell backwards down a flight of concrete, steel-edged stairs. Watkins was taken to the emergency room at D.C. General Hospital. Watkins testified that he sustained scrapes around his waist, shoulder, hips and back and that he had swelling after the fall. Watkins said that after speaking with a physician briefly about how he came to be injured, he was "pushed ... to the side ... where [he] laid all night long" without receiving any treatment or medication. The next morning Watkins was given paraflex and ten extra-strength Tylenol pills. He was given Motrin after he returned to Occoquan later that evening. Watkins testified that since his release on April 19, 1988, he has experienced more spasms and impotency and that he remains on medication. Additional facts pertaining to the parties' respective arguments are set forth in the sections addressing their claims.

## II. *Watkins' Jurisdictional Challenge*

We consider first Watkins' claim in his cross-appeal because he places in question the jurisdiction of the court to entertain the District's appeal. Watkins argues that the trial court abused its discretion in vacating its original order denying the District's post-trial motion to set aside the verdict or grant a new trial and re-entering the order to allow the District to note a timely appeal. He contends that the District has not shown facts which bring it within that narrow exception to the general rule that a party may not rely upon a failure to receive notice of the entry of final judgment as a basis for relief from that judgment under Super. Ct. Civ. R. 60(b) and for tolling the time for noting an appeal.

In a civil case, a notice of appeal must be filed "within thirty days after entry of the judgment or order from which the appeal is taken." D.C.App. R. 4(a)(1). The Clerk of the Superior Court is required to serve notice of the entry of an order signed or decided outside the presence of the parties to their counsel of record, if any, or to the parties. Super. Ct. Civ. R. 77(d). Generally, "[l]ack of notice of the entry by the Clerk [of an order] does not affect the time to appeal or relieve or authorize the Court to relieve a party for failure to appeal within the time allowed, except as permitted in the Rules for the District of Columbia Court of Appeals." *Id.* "Thus, lack of knowledge of the entry of judgment occasioned by failure to receive the clerk's notice does not, without more, constitute grounds for a finding of excusable neglect" for purposes of relieving a party from a final judgment or order. *See Pryor v. Pryor,* 343 A.2d 321, 323 (D.C.1975).

There is a narrow exception to this general rule which applies when no party to the action receives notice of the entry of the order. *Schmittinger v. Schmittinger,* 538 A.2d 1158, 1161 & n. 8 (D.C.1988). The rationale for the exception is that the actual act of "mailing of notice by the clerk [is] essential to the computation of appeal time," and the failure of all parties to receive notice "is a significant indication that no such notice was in fact mailed by the clerk." *Id.* at 1162. In such circumstances, we approved the following procedure:

> [A] "trial court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal when neither party had actual notice of the entry of judgment, when the winning party is not prejudiced by the

appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry."

*Id.* at 1161 (quoting *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.,* 163 U.S.App. D.C. 140, 142, 500 F.2d 808, 810 (1974)). Therefore, the trial court has discretion under Super. Ct. Civ. R. 60(b) to grant relief where the circumstances are such as to indicate that neither party received actual notice of the entry of judgment.[2] *Schmittinger, supra,* 538 A.2d at 1162–63 & n. 8.

Watkins argues that since he received notice, the narrow exception carved out in *Schmittinger,* where neither party received a copy of the order, does not apply here. This argument fails to take into consideration the rationale underlying the *Schmittinger* exception. It is the actual act of "mailing of notice by the clerk [that is] essential to the computation of appeal time." *Schmittinger, supra,* 538 A.2d at 1162; *see* D.C.App. R. 4(a)(3).[3] Therefore, it is evidence that the clerk did not mail the notice which is significant. *See Schmittinger,* 538 A.2d at 1162. While *Schmittinger* recognizes, as significant evidence that the clerk did not mail the order, the fact that neither party received a copy, it does not exclude from the trial court's consideration other equally compelling evidence that the clerk did not mail the notice consistent with the requirements of the rules. Such evidence is present here.

In this case, the jury returned its verdict in favor of Watkins on May 17, 1993, and the District filed its motion for judgment not-withstanding the verdict or in the alternative, for remittitur or a new trial on June 7, 1993. The trial court's order denying the motion was docketed on October 5, 1993, and the record reflects that a copy of the order was mailed on October 6, 1993. However, although the District's motion specified its new address, it appears from the record that the order was sent to its former address through "in[-]house mail." On January 7, 1994, the District filed a motion, with supporting affidavits, requesting the court to vacate its October 5, 1993 order, contending that it had moved from the old address some five months earlier and that it did not receive notice of the court's order until December 21, 1993, when Watkins' counsel called to inquire about payment of the judgment.[4] Having considered the motion and Watkins' opposition, the trial court granted it, vacated its earlier order and re-entered the order on February 22, 1994. The District noted this appeal on March 30, 1994.

■ The grant or denial of a motion for relief from a judgment or order under Super. Ct. Civ. R. 60(b) is within the discretion of the trial court and will be disturbed on appeal only upon a showing of an abuse of discretion. *Clay v. Deering,* 618 A.2d 92, 94 (D.C.1992); *Jones v. Hunt,* 298 A.2d 220, 221 (D.C.1972). In exercising that discretion, the trial court necessarily considered the circumstances surrounding the District's claim that it never received notice of the entry of the subject order, which was directed to its former address. In a related context, we have

2. Rule 60(b) provides in pertinent part that:

On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment.

3. D.C.App. R. 4(a)(3) provides in pertinent part as follows:

When a judgment or final order is entered or decided out of the presence of the parties and counsel, such judgment or order shall not be considered as having been entered, for the purpose of calculating the time for filing a notice of appeal or an application for the allowance of an appeal under Rule 6, until the fifth day after the Clerk of the Superior Court has made an entry on the docket, including microfilmed entry, reflecting the mailing of notice by that clerk.

4. The District submitted three affidavits in support of the motion which explained the process by which the District retrieved mail each day from its former address on Vermont Avenue, N.W., from which it moved on May 23, 1993. According to the affidavits, a messenger picked up the mail from the Vermont Avenue address each day and delivered it to the District's new address at 441 Fourth Street, N.W. Neither the assistant corporation counsel assigned to the case nor the head of the litigation section involved recalled seeing such an order, although each reviewed all mail pertaining to cases assigned to them.

held that "lack of knowledge of the entry of a judgment occasioned by the failure to receive the clerk's notice does not, without more, constitute grounds for a finding of excusable neglect." *Pryor, supra,* 343 A.2d at 323 (citing *Gooch v. Skelly Oil Co.,* 493 F.2d 366, 369–70 (10th Cir.1974)).[5] Subsequently, this court found no abuse of discretion in the trial court's decision granting a party leave to file an appeal after expiration of the time for noting it had expired where the record reflected no notice to any counsel of the entry of the order denying a motion for a new trial. *Murville v. Murville,* 433 A.2d 1106, 1108 n. 1 (D.C.1981). In *Pryor,* we observed that "[e]xcusable neglect has been held to include lack of knowledge of entry of a judgment, extraordinary cases such as physical disability and unusual delay in the transmission of mail, and so-called 'unique circumstances.'" 343 A.2d at 322.

▮▮▮ The combination of factors in this case, including the clerk's failure to mail the notice to the District's last known address, the uncertainty in the record as to how the notice was sent, and the District's failure to receive the notice of the order, presents a sufficient showing of extraordinary circumstances to support the trial court's exercise of its discretion to grant the motion. *See Washington Metro. Area Transit Auth. v. Brown,* 619 A.2d 1188, 1191–92 (D.C.1993). While the actual mailing of the notice is the

critical element in the running of the time for notice of appeal, *Schmittinger, supra,* 538 A.2d at 1162, the rule contemplates that the mail will be directed to the party's address where he or she is likely to receive it. Only when mail is properly directed can the act of mailing justify the presumption of receipt. *See Toomey v. District of Columbia,* 315 A.2d 565, 567 (D.C.1974) (presumption of receipt arises upon proof of mailing letter, properly addressed and stamped) (quoting *Columbia Finance Co. v. Worthy,* 141 A.2d 185, 186 (D.C.Mun.App.1958)). The rule provides explicitly that when notifying parties by mail, the clerk must mail the notice to the party's "last known address."[6] Super. Ct. Civ. R. 77(d); Super. Ct. Civ. R. 5. The record shows that, although the District's new mailing address was listed on its motion for JNOV, the clerk sent notice of the trial court's ruling on the motion to the District's former address instead of its last known address. Moreover, the notation on the order indicates that the notice may not have been sent by ordinary mail at all, but instead through the court's "in-house" circulation system. When these facts are considered along with the District's evidence that it did not receive the order, the requisite showing of extraordinary circumstances for a finding of excusable neglect may be found. Therefore, we conclude that the trial court did not abuse its discretion in granting the District's motion to vacate and re-entering the order

5. In *Pryor,* the court records showed that the clerk sent notice of the entry of the order as required by the rule, but that counsel for the party claimed that she had not received it. 343 A.2d at 322–23. The attorney filed a motion to extend the time for noting an appeal based on excusable neglect under D.C.App. R. 4 II(a)(4) (now D.C.App. R. 4(a)(4)). *Id.* at 322 & n. 3. This court held that the trial court did not abuse its discretion in refusing to find excusable neglect and denying the motion for extension of time. *Id.*

6. Rule 77(d) provides as follows:
 Immediately upon the entry of an order or judgment signed or decided out of the presence of the parties or their counsel, *the Clerk shall serve a notice of the entry by mail in the manner provided in Rule 5* upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these Rules; but any party may

in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the Clerk does not affect the time to appeal or relieve or authorize the Court to relieve a party for failure to appeal within the time allowed, except as permitted in the Rules for the District of Columbia Court of Appeals.
 (Emphasis added.) Rule 5(b), in turn, provides in pertinent part as follows:
 Whenever under these Rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the Court. Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or *by mailing it to the attorney or party at the attorney's or party's last known address* or, if no address is known, by leaving it with the Clerk of the Court.
 (Emphasis added.)

denying the District's motion for JNOV, or in the alternative a new trial, or remittitur. Accordingly, the District's filing of its appeal was timely. We turn then to consideration of the issues raised by the District.

### III. *The District's Appeal*

The District argues that the trial court erred in denying its motion for JNOV, or in the alternative for a new trial or remittitur. Specifically, the District contends that Watkins failed to establish a national standard of care or a causal relationship between the District's alleged breach of that standard and his injuries. Viewing the evidence in the light most favorable to Watkins, as we must, we conclude that the evidence was adequate to sustain the verdict.

■■■ In reviewing on appeal the trial court's denial of the motion for judgment notwithstanding the verdict, we apply the same standard as the trial court. *Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 506 A.2d 1100, 1103 (D.C.1986) (citing *District of Columbia v. Cassidy,* 465 A.2d 395, 397 (D.C. 1983) (other citation omitted)). "A judgment notwithstanding the verdict is proper only in 'extreme' cases, in which no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party." *Id.* (quoting *District of Columbia v. Cooper,* 445 A.2d 652, 655 (D.C.1982) (en banc)). When there is some evidence from which jurors could find that the elements of negligence have been established or where disputed facts or resolution of credibility issues determine the outcome, the case is for the jury. *Washington Welfare Ass'n Inc., v. Poindexter,* 479 A.2d 313, 315 (D.C.1984) (citing *District of Columbia v. Gandy,* 450 A.2d 896, 900 (D.C.1982)). The motion may be granted " 'only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment.' " *Id.* (quoting *Lewis v. Washington Metro. Area Transit Auth.,* 463 A.2d 666, 669 (D.C.1983)). Cases in which issues of negligence and proximate cause will not be for the jury are unusual. *Oxendine,* 506 A.2d at 1103 (citing *Rich v. District of Columbia,* 410

A.2d 528, 532 (D.C.1979)). Against these standards, the District's argument fails.

### A. *Standard of Care*

■■■ In an action for negligence, the plaintiff has the burden of proving " 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury.' " *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988) (quoting *Meek v. Shepard,* 484 A.2d 579, 581 (D.C. 1984) (other citation omitted)). In a case involving a claim of medical negligence, ordinarily expert testimony is required to prove these elements. *Meek,* 484 A.2d at 581 & n. 4 (citations omitted). Thus, "the plaintiff must establish through expert testimony the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances." *Id.* at 581 (citing *Morrison v. MacNamara,* 407 A.2d 555, 560–65 (D.C. 1979) (other citations and footnote omitted)). The conduct for medical professionals is measured by a national standard, rather than a local one. *Capitol Hill Hosp. v. Jones,* 532 A.2d 89, 93 (D.C.1987); *Morrison,* 407 A.2d at 565.

■■■ The District argues that Watkins failed to establish a national standard of care for health providers treating individuals suffering from back pain because Watkins' expert witness testified only to the standard of care in the Washington metropolitan area. The testimony was not so restricted, particularly when viewed most favorably to Watkins. In the course of qualifying Watkins' expert, Dr. Lilly, counsel for Watkins asked the physician whether he was familiar with the standard of care in treating a patient in "the Washington, D.C. metropolitan area" and whether he was qualified to testify as to "whether or not a particular regimen of treatment complies with that standard of care or falls below that standard of care." Dr. Lilly responded that he was, and the court accepted him as an expert witness to render an opinion as to the standard of care appropriate for a person with Watkins' condition. The District did not object. In subsequent testimony, Dr. Lilly testified concern-

ing the standard of care and the District's deviation from it without restricting his responses to a particular locality. Put another way, Dr. Lilly's testimony encompassed not just one particular locality, but what was required of a medical facility under the circumstances involved here. Dr. Lilly testified that, under the circumstances presented here, a medical practitioner would have provided Watkins with something to reduce his pain and that the District's medical personnel fell below that standard of care in failing to provide the medication. Dr. Lilly's testimony was sufficient to establish the treatment that a reasonably prudent doctor would have provided under similar circumstances. *Meek, supra,* 484 A.2d at 581.

The District also argues that Dr. Lilly failed to give a standard of care generally, testifying only about his own personal opinion of the standard of care for health care providers treating a patient with Watkins' condition and not how other health care providers would treat patients under the circumstances. Of course, testimony about what the expert would have done personally for the patient would be insufficient. *See Meek, supra,* 484 A.2d at 581. However, a fair reading of Dr. Lilly's testimony does not support the argument that his testimony concerned what he would do personally under the circumstances. The following question and answer are illustrative:

> Q. What would have been the standard of care for someone in Mr. Watkins' condition?
>
> A. I think that the standard of care for a patient with a long history of chronic pain; muscle spasms; unstable back, would be that a physician or a physician's assistant, or a nurse, or a medical practitioner of any degree, certainly should have attempted to provide [Watkins] with something to reduce his pain.

Although Dr. Lilly prefaced his opinion with "I think," the testimony, fairly read, expresses the witness' opinion of the standard of care, rather than what he would do himself. Viewed in the light most favorable to Watkins, the evidence was sufficient to allow a reasonable juror to find that a reasonably prudent physician would have provided Motrin or its equivalent to a patient in Watkins' condition. *See Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 181 (D.C.1990).

## B. *Proximate Cause*

The District argues that Watkins failed to establish that its failure to provide him with Motrin was the proximate cause of his paralysis and fall. It also contends that Dr. Lilly's opinion on this issue was insufficient as a matter of law because it was not expressed within the requisite degree of medical certainty and because the opinion was not based upon the facts in this case. We conclude that the evidence on the issue of proximate cause was adequate to sustain the jury's verdict in light of controlling law.

"To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." *Psychiatric Inst. of Wash. v. Allen,* 509 A.2d 619, 624 (D.C.1986) (emphasis deleted).[7] The evidence is adequate to establish proximate cause if the expert "state[s] an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely than anything else to have been the cause (or a cause) of a plaintiff's injuries." *Id.* A "'reasonable' medical certainty, reflects an objectively well-founded conviction that the likelihood of one cause is greater than the other; it does not mean the expert is 'personally certain' of the cause or

---

**7.** Although an expert is generally required to establish the causal relationship, if such relationship is within the realm of common knowledge and experience, expert testimony is not necessary to establish proximate cause. *See Meek, supra,* 484 A.2d at 581 n. 4. Watkins claims that he could have established his claim for damages without expert testimony on the issue of causa-

tion because back pain is common as is the knowledge that pain-killers help. *See Jones v. Miller,* 290 A.2d 587, 590–91 (D.C.1972). In light of our disposition of the District's argument, we need not address whether Watkins could have met his burden on this issue without expert testimony.

that the cause is discernable to a certainty." *Clifford v. United States,* 532 A.2d 628, 640 n. 10 (D.C.1987) (citing *Psychiatric Inst.,* 509 A.2d at 624). Dr. Lilly's testimony meets the standard governing sufficiency.

 In this case, Watkins' expert testified first that he had an opinion, within a reasonable degree of medical certainty, as to whether or not Watkins' fall could be attributed to, or caused by, the failure to provide him with Motrin for his pain. He was then asked, "And what is that opinion?" Dr. Lilly responded:

> [T]he increase in the pain that Mr. Watkins suffered during those days of incarceration; the increase in the muscle spasms, caused a state of increased low back instability, which contributed [to] or caused his fall.

Dr. Lilly's opinion linked the District's medical staff's failure to provide Watkins with Motrin with his increase in pain and resultant instability which caused Watkins to fall. This evidence was sufficient for "a reasonable juror [to] find that there was a direct and substantial causal relationship between [the District's] breach of the standard of care and [Watkins'] injuries." *Psychiatric Inst., supra,* 509 A.2d at 624; *see also District of Columbia v. Anderson,* 597 A.2d 1295, 1298–99 (D.C.1991).

The District also contends that the testimony was insufficient because it was not based on the facts in this case. It argues that the facts adduced at trial showed that Motrin did not prevent the paralysis that caused Watkins to fall and that Motrin is prescribed to reduce pain and fever, not to treat numbness, paralysis or spasms. There was evidence that Watkins experienced paralysis when in pain and that he took Motrin which relieved his pain. In addition to testifying that the failure to give Motrin contributed to or caused Watkins' injury, Dr. Lilly explained the connection between the pain and paralysis, *i.e.,* that "the increase in the pain ... the increase in the muscle spasms, caused a state of increased low back instability, which contributed [to] or caused [Wat-

kins'] fall." Whether being deprived of Motrin at the time Watkins sustained his injury proximately caused him to fall or whether there was some other cause is a question of fact for the jury. *See Sanders v. Wright,* 642 A.2d 847, 849 (D.C.1994) (Where evidence supports a rational finding of proximate cause, the issue is one of fact for the jury.). Viewing the evidence in the light most favorable to Watkins, the non-moving party, there was sufficient evidence for a jury reasonably to find that the District's negligence was the proximate cause of Watkins' injury.[8] *See Kane v. Ryan,* 596 A.2d 562, 564 (D.C.1991) (reversal of denial of a motion for JNOV warranted "only if no reasonable juror could have reached the verdict") (citing *Jackson v. Condor Management Group, Inc.,* 587 A.2d 222, 224 (D.C.1991) (other citation omitted)).

## IV. *Request for Remittitur*

Finally, the District argues that the jury's award of $125,000 was excessive and unsupported by the evidence. It contends that the evidence adduced at trial showed that Watkins suffered only a few scrapes and bruises, a bump on his head and some swelling from his fall. According to the District, since there was no evidence, except for Watkins' testimony that he became impotent, that the fall caused him to suffer any more pain or other physical ailments than he suffered previous to his fall, the jury's verdict was not proportional to the harm Watkins suffered and such a high award "shocks the conscience."

 The trial court's decision denying a motion for remittitur or new trial based upon a claim of excessive verdict will be reversed only for an abuse of discretion. *Louison v. Crockett,* 546 A.2d 400, 403 (D.C. 1988) (citing *Lacy v. District of Columbia,* 408 A.2d 985, 988 (D.C.1979)). We accord great deference to the trial court's decision granting or denying such a motion. *Id.* (citing *International Sec. Corp. of Va. v. McQueen,* 497 A.2d 1076, 1081 (D.C.1985)). Greater deference is given to the trial court's

---

8. The District did not challenge in its proximate cause argument the sufficiency of the expert's evidence to establish the causal relationship be-

tween the fall and Watkins' claimed injuries and damages. Therefore, that issue is not before us.

denial of a new trial motion on the ground of excessive verdict because of the "so-called double deference," *i.e.,* deference to the jury and deference to the trial court, who were present and in a better position to observe the full trial. *Id.* at 404 (citations omitted). The trial court must consider whether the "verdict resulted from passion, prejudice, mistake, oversight, or consideration of improper elements" or whether it is " 'beyond all reason, or . . . so great as to shock the conscience.' " *Id.* at 403 (quoting *Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 594 (D.C.1985) (alteration in original)) (quoting *Wingfield v. Peoples Drug Store, Inc.,* 379 A.2d 685, 687 (D.C.1977) (other citation omitted)).

 The evidence at trial was that Watkins' condition worsened after his incarceration, that he incurred substantial medical expenses, and suffered physical pain and impotency after he was injured. Contrary to the District's contention, in addition to Watkins' own testimony, Watkins' expert testified, without objection, that Watkins' fall was related to his impotency. On the facts of this case, it cannot be said that the verdict "shocks the conscience," or is contrary to all reason. Therefore, we find no abuse of discretion in the trial court's decision denying the District's motion for a new trial or remittitur on the grounds of an excessive verdict.

Accordingly, the judgment appealed from hereby is

*Affirmed.*